1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  MICHAEL OLIVER, et al.,

11                          Plaintiffs,

12            v.

13  ALCOA, INC.,

14                          Defendant.

CASE NO. C16-0741JLR

ORDER DENYING MOTIONS TO
DISMISS, FOR SUMMARY
JUDGMENT, AND FOR A
PROTECTIVE ORDER

15                   **I.      INTRODUCTION**

16        The following motions are before the court:  (1) Defendant Alcoa, Inc.'s ("Alcoa")

17  Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the complaint (MTD (Dkt.

18  # 5)); (2) Plaintiffs Michael Oliver and Kris Oliver's (collectively, "the Olivers") cross

19  motion for summary judgment (MSJ (Dkt. # 9)); (3) Alcoa's Rule 12(b)(6) motion to

20  dismiss the Olivers' fourth cause of action  (2d MTD (Dkt. # 14)); and (4) Alcoa's

21  motion for a protective order to stay discovery (MTS (Dkt. # 15)).  The court has

22  reviewed the motions, all of the related submissions of the parties, the relevant portions

ORDER- 1

of the record, and the applicable law.  Being fully advised,[1] the court DENIES all of the

motions.

## II.        FACTUAL & PROCEDURAL BACKGROUND

On April 20, 2016, the Olivers filed a complaint in Whatcom County Superior

Court against Alcoa alleging claims for declaratory relief, specific performance, and

breach of contract.  (Compl. (Dkt. # 1-1).)  The Olivers allege that Mr. Oliver has been an

employee of Alcoa's Intalco Works aluminum smelter in Ferndale, Washington for

nearly 30 years.  (*Id.* ¶ 2.1.)  On November 2, 2015, Alcoa announced that it would idle

its smelter operations and lay off employees.  (*See id.* ¶ 2.2.)  The Olivers allege that on

December 18, 2015, Alcoa and Mr. Oliver entered into a binding "Memo[orandum] and

Separation Agreement," which is attached to the Olivers' complaint as Exhibit A.  (*Id.*

¶ 2.3, Ex. A at 2-3 (attaching Memorandum), 4-5 (attaching Separation Agreement).)

The Memorandum states that it contains "important details about your separation from

Alcoa Intalco Works."  (*Id.* Ex. A at 2.)  The Memorandum recites that Mr. Oliver's "last

day of employment will be 3/31/2016."  (*See id.* ¶ 2.3, Ex. A at 2.)  Mr. Oliver alleges

that the Memorandum provides that "in exchange for executing a release of claims

---

[1] Alcoa requests oral argument on its motion to dismiss.  (*See* MTD at 1.)  The court, however, does not consider oral argument to be necessary.  *See* Local Rules W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.").  The parties had a full opportunity to present their arguments to the court in writing, and oral argument would not assist the court.  Accordingly, the court declines to hear oral argument on Alcoa's motion.  *See Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 867, 869 (9th Cir. 1991) (concluding that the district court did not abuse its discretion by denying oral argument on a motion to dismiss because the party failed to demonstrate prejudice from the denial).

against [Alcoa] [Mr. Oliver] would receive an enhanced severance payment" of $80,292.00.  (*Id.* ¶ 2.3; *see also id.* Ex. A at 2 ("Enhanced Severance Pay:  Your enhanced Severance benefit is $80,292.00.").)  The Separation Agreement, which was attached to the Memorandum, contains the release of claims that Mr. Oliver executed.  (*Id.* Ex. A at 2 ("To receive an enhanced separation pay package, you must sign the attached written Separation Agreement releasing [Alcoa] from future claims."); *see also id.* at 4-5 (attaching signed Separation Agreement).)

The Olivers allege that before Mr. Oliver signed the Memorandum and Separation Agreement, he "asked representatives of . . . Alcoa whether there were any other documents that were a part of the agreement or if he needed to review any other documents in order to understand the agreement's terms."  (*Id.* ¶ 2.4.)  The Olivers allege that an Alcoa representative told Mr. Oliver that there were no other documents he needed to review or sign.  (*See id.*)  The Olivers allege that in reliance on the Memorandum and Separation Agreement, Mr. Oliver obtained alternate employment to begin after his last day of employment with Alcoa.  (*Id.* ¶ 2.5.)  The Olivers assert that Alcoa unilaterally announced on January 21, 2016, that it was rescinding all severance agreements with its employees at the facility, including the agreement that it had entered into with Mr. Oliver.  (*Id.* ¶ 2.6.)  Finally, the Olivers contend that Mr. Oliver performed all of the conditions required of him by the Memorandum and Separation Agreement, including executing the release of claims and working until March 31, 2016, but Alcoa has refused to pay him the enhanced severance benefit it had promised.  (*Id.* ¶ 2.7.)

1    On May 31, 2016, Alcoa filed a motion to dismiss the Olivers' complaint under

2    Federal Rule of Civil Procedure 12(b)(6).  (*See* MTD.)  Alcoa contends that the

3    Memorandum that Mr. Oliver signed expressly states that Mr. Oliver would "receive

4    severance pay in accordance with the Company's Severance Pay Plan."  (MTD at 2

5    (citing Compl. Ex. A).)  Aloca also relies upon the Separation Agreement that Mr. Oliver

6    signed, which states that severance pay and benefits "are intended to provide an

7    economic bridge during possible unemployment and not as compensation for services

8    previously rendered."  (*Id.* (citing Compl. Ex. A.)

9    Alcoa contends that the "Severance Pay Plan" or "Plan" that is referenced in the

10   Memorandum and Separation Agreement is a document entitled the "Involuntary

11   Separation Plan" ("ISP") and that the ISP expressly states in numerous places that

12   employees are only eligible to receive severance payments if their employment is

13   severed.  (*See* MTD at 3 (citing Furnas Decl. (Dkt. # 6) ¶¶ 3-4, Ex. A).)  Alcoa asserts

14   that on March 31, 2016, "Alcoa informed [Mr.] Oliver he would not be laid off; rather,

15   his employment at Alcoa could continue."  (*Id.* (citing Compl. ¶¶ 2.5, 2.6, 5.5).)[2]  Alcoa

16   asserts that, in fact, Mr. Oliver did not terminate his employment with Alcoa on March

17   31, 2016, but continued to work for the company.  (*Id.* at 3-4 (citing Compl. ¶ 2.1 (stating

18   _____

19   [2] The paragraphs of the complaint that Alcoa cites do not support Alcoa's contention that
     Alcoa informed Mr. Oliver he would not be laid off.  Paragraph 2.5 states that "[i]n reliance on
     the Separation Agreement," Mr. Oliver "secured alternate employment to begin after his last day

20   of employment with . . . Alcoa."  (Compl. ¶ 2.1.)  Paragraph 2.6 states that on January 21, 2016,
     "Alcoa unilaterally announced that it would be rescinding all severance agreements, including

21   the one it had entered into with [Mr.] Oliver."  (*Id.* ¶ 2.6.)  Paragraph 5.5 states that "Plaintiffs
     have been deprived of the opportunity to work at the alternate employment he [sic] has secured."

22   (*Id.* ¶ 5.5.)

1    that Mr. Oliver "has been an employee of [Alcoa] for nearly thirty (30) years.".)  Based

2    on the ISP and the language of the Memorandum and Separation Agreement, Alcoa

3    argues that Mr. Oliver was never severed from his employment.  (*Id.* at 5.)  Thus, his

4    claims should all be dismissed because the condition precedent to his receipt of severance

5    pay was never satisfied.  (*Id.*)

6           On June 20, 2016, the Olivers filed an amended complaint.  (Am. Compl. (Dkt.

7    # 8).)  The Olivers' amended complaint is identical to their original complaint except that

8    the amended complaint adds a fourth cause of action for willful withholding of wages

9    under RCW 49.52.050 and RCW 49.52.070.  (*Compare* Compl. *with* Am. Comp.; *see*

10   *also* Hobbs Decl. (Dkt. # 13) ¶ 2, Ex. A.)[3]

11          On June 20, 2016, the Olivers also filed a motion for summary judgment.  (*See*

12   MSJ.)  The Olivers argue that the ISP is not part of the contract entered into by Mr.

13   Oliver and Alcoa.  (*See* MSJ at 11 ("The ISP Should Not be Incorporated Into the

14   Severance Agreement.") (Underlining omitted).)  They argue that the Memorandum and

15   Separation Agreement that Mr. Oliver signed is a binding and enforceable contract

16   without the ISP.  (*See id.* at 8 ("The Memorandum and Separation Agreement Stand

17   _____

18          [3] When an amended complaint is filed while a motion to dismiss is pending, it generally
      moots the motion to dismiss.  *Williamson v. Sacramento Mortgage, Inc.*, No. CIV. S-10-2600
19    KJM, 2011 WL 4591098, at *1 (E.D. Cal. Sept. 30, 2011), *as amended* (Oct. 11, 2011) (citing
      *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (amended pleading supersedes the
20    original pleading)).  However, when the amended complaint is substantially identical to the
      original complaint, an amended complaint will not moot the pending motion to dismiss.  *Mata-*
21    *Cuellar v. Tennessee Dep't of Safety*, No. 3:10-0619, 2010 WL 3122635, at *2 (M.D. Tenn. Aug.
      6, 2010).  Here, as noted above, except for the addition of their fourth cause of action, the
22    Olivers' amended complaint is identical to the original complaint.  Accordingly, the amended
      complaint did not moot Alcoa's initial motion to dismiss.

ORDER- 5

Alone As An Enforceable Contract.") (bolding omitted).)  They contend that Aloca

agreed that Mr. Oliver's last day of employment would be March 31, 2016, and that in

exchange for releasing any potential legal claims over his termination, Alcoa would pay

Mr. Oliver $80,292.00 in severance pay.  (*Id.* at 2.)  The Olivers insist that Mr. Oliver

fulfilled his contractual duties by signing Alcoa's requested release and by working

through March 31, 2016.  (*Id.*)  Accordingly, they argue that they are entitled to summary

judgment on their claims, and an award of double damages and attorney's fees under

RCW 49.52.070.  (MSJ at 14.)

In their motion for summary judgment, the Olivers also argue that Alcoa's motion

to dismiss is procedurally improper because it relies on factual information outside of the

pleadings.  (*Id.*)  They contend that the court should convert Alcoa's motion to dismiss

into a motion for summary judgment and deny it.  (*See id.* at 2, 5-7.)  On June 20, 2016,

the Olivers also filed a response to Alcoa's motion to dismiss their original complaint.

(Oliver Resp. to MTD (Dkt. # 11).)  In this response, the Olivers "incorporate by

reference" the arguments in their motion for summary judgment.  (*Id.* at 1.)

Alcoa opposes the Olivers' motion for summary judgment.  (SJ Resp. (Dkt. # 18).)

Alcoa argues that the plain language of the Memorandum and Separation Agreement, as

well as the intrinsic evidence surrounding the Memorandum and Separation Agreement,

including the ISP, demonstrate that the parties intended for Mr. Oliver to receive a

severance payment only if he was severed from his employment.  (*Id.* at 8-18.)  In

addition, Alcoa asserts that, under Federal Rule of Civil Procedure 56(d), it is entitled to

engage in discovery before the court rules on the Olivers' motion.  (*Id.* at 18-21.)

On July 6, 2016, Alcoa filed a second Rule 12(b)(6) motion to dismiss the Olivers' fourth cause of action for willful withholding of wages in violation of RCW 49.52.050 and RCW 49.52.070, which the Olivers added in their amended complaint.  (*See* 2d MTD; *see also* Am. Compl. ¶¶ 6.1-6.5.)  Alcoa argues that the court should dismiss the Olivers' fourth cause of action for the same reasons that Alcoa asserted the Olivers' first three causes of action should be dismissed.  (2d MTD at 1-2; *see generally* MTD.)  Alcoa purports to incorporate by reference all of the arguments stated in its original motion to dismiss, as well as the declaration Alcoa filed and its reply memorandum in support of Alcoa's original motion to dismiss.  (*Id.* at 1.)

On July 6, 2016, Alcoa filed a motion seeking a stay in discovery pending the court's disposition of its motion to dismiss and the Olivers' motion for summary judgment.  (*See generally* MTS.)  The Olivers oppose this motion.  (MTS Resp. (Dkt. # 21).)

## III.   ANALYSIS

### A.  Alcoa's Motions to Dismiss

The court first considers Alcoa's two motions to dismiss.[4]  Alcoa bases its second motion to dismiss the Olivers' fourth cause of action for willful withholding of wages on

---

[4] The court notes that it is considering both motions to dismiss and a motion for summary judgment in this order.  The court is mindful of the differing standards of review that govern these motions (*see infra* §§ III.A.1., III.B.1) and carefully considers each motion on its own terms and according to the appropriate standard of review.  Because the standards of review are different on a motion to dismiss as opposed to a motion for summary judgment, the fact that a party fails to meet the standard on a motion to dismiss does not mean that a similar argument

1   the same grounds it asserted with respect to the Olivers' first three causes of action.  (2d

2   MTD at 2 ("Alcoa respectfully requests that the Court dismiss Plaintiffs' Wage Claim

3   with prejudice for the same reasons that Alcoa has moved to dismiss with prejudice all of

4   Plaintiffs' other claims."); MTD Reply (Dkt. # 12) at 4 ("Plaintiffs' new fourth cause of

5   action in their Amended Complaint is defective for the same reasons that their first three

6   causes of action are defective.").)  Accordingly, the court considers these motions

7   together.

8                    **1.  Standard of Review**

9           When considering a motion to dismiss under Federal Rule of Civil Procedure

10  12(b)(6), the court construes the complaint in the light most favorable to the nonmoving

11  party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.

12  2005).  The court must accept all well-pleaded allegations of material fact as true and

13  draw all reasonable inferences in favor of the plaintiff.  *See Wyler Summit P'ship v.*

14  *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "To survive a motion to

15  dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

16  claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

17  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus*

18  *VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility

19  when the plaintiff pleads factual content that allows the court to draw the reasonable

20  inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

21  _____

22  would not succeed were it to be properly brought in the context of a motion for summary
    judgment.

ORDER- 8

### 2. The ISP

Alcoa urges the court to consider the ISP when deciding Aloca's motions to dismiss.  (MTD at 7.)  Alcoa argues that the Memorandum and Separation Agreement are both attached to the Olivers' complaint (*see* Compl. Ex. A; *see also* Am. Compl. Ex. A), and that these documents expressly refer to the "the Company's Severance Pay Plan" or "Plan" and unambiguously state that Mr. Oliver will receive severance benefits "in accordance" therewith.  (MTD at 5-7.)  Alcoa contends that its ISP is "the Company's Severance Pay Plan" or "Plan" referenced in the Memorandum and Separation Agreement.  (*See* Furnas Decl. ¶¶ 3-4.)  Finally, Alcoa argues that (1) under the ISP a permanent separation from employment is a condition precedent to Alcoa incurring any obligation to make a severance payment and (2) in this instance, the condition precedent was not met because Mr. Oliver was not terminated on March 31, 2016.  (*Id.* 7-9.)

On a motion to dismiss, the court may consider materials incorporated into the complaint or matters of public record.  *See Coto Settlement v. Elsenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  The doctrine of incorporation includes "situations where the complaint necessarily relies upon a document or the contents of a document are alleged in a complaint, the document's authenticity is not in question[,] and there are no disputed issues as to the document's relevance."  *Id.* (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).  However, "the mere mention of the existence of a document is insufficient to incorporate the contents of a document."  *Id.*  (citing *United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003)).

1    Here, the amended complaint itself is does not refer specifically to the ISP.  (*See*

2    *generally* Am. Compl.)  The Memorandum and Separation Agreement, which are

3    attached to the amended complaint, refer to the "Company's Severance Pay Plan" and

4    "the Plan," but never specifically use the term "ISP."  (*See generally id.* Ex. A.)  Alcoa

5    provides a declaration from one of its employees in which the employee testifies that

6    these terms used in the Memorandum and Separation Agreement in fact refer to the ISP.

7    (Furnas Decl. (Dkt. # 6) ¶¶ 3-4.)  Thus, Alcoa must rely upon factual information outside

8    of the pleadings to connect the ISP to the "Plan" referenced in the Olivers' amended

9    complaint.  In short, Alcoa asks the court to rely, not only on the ISP, but also on the

10   declaration of its employee to provide the necessary connection between the Olivers'

11   amended complaint and the ISP.  Because Alcoa must rely upon this testimony, the court

12   is unable to review the ISP in the context of a motion to dismiss.

13    Further, Mr. Oliver has filed a declaration in which he testifies that he asked a

14   representative of Alcoa if there were any other documents that he should review to

15   understand Alcoa's proposal (other than the Memorandum and Separation Agreement),

16   and the representative reassured him that there was "nothing else."  (Oliver Decl. (Dkt.

17   # 10) ¶ 6.)  Thus, the Olivers dispute the relevance of the ISP to their claims against

18   Alcoa.  This dispute also means that the court cannot review the ISP under the doctrine of

19   incorporation.  *See Coto Settlement*, 593 F.3d at 1038.  Accordingly, the court will not

20   consider the ISP with respect to Alcoa's motion to dismiss.  Because the court declines to

21   consider the ISP in the context of Alcoa's motions to dismiss, the court must deny those

22

1 | portions of Alcoa's motions that rely upon language contained within the ISP as a basis
2 | for dismissal of the Olivers' claims.[5]

### 3.   The Memorandum and Separation Agreement

Alcoa also asserts that it is entitled to dismissal of the Olivers' claims "even looking solely at the terms of the Memorandum and Separation Agreement," which are attached to the amended complaint.  (MTD at 9.)  The Olivers repeatedly allege that Alcoa agreed to pay Mr. Oliver "severance payment in exchange for working through March 31, 2016[,] and releasing his claims against . . . Alcoa.  (Am. Compl. ¶¶ 3.2, 4.2, 5.2.)  Alcoa argues, however, that actual termination of Mr. Oliver's employment was a condition precedent to Alcoa's obligation to make a severance payment.  (MTD at 9.)

Under Washington law, a condition precedent is an event that occurs after a contract is made and which must occur before a right to immediate performance arises. *Koller v. Flerchinger*, 441 P.2d 126, 128 (Wash. 1968).  Whether a contract provision is a condition precedent or a contractual obligation depends on the intent of the parties, which the court determines from a fair and reasonable construction of language the parties used and a consideration of all the surrounding circumstances.  *Id.*; *Tacoma Northpark, LLC v. NW, LLC*, 96 P.3d 454, 457 (Wash. Ct. App. 2004).  Where it is

---

[5] The court declines to convert Alcoa's motion to one for summary judgment.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  This matter is in its early stages, and the parties have not yet engaged in discovery.  *See* Fed. R. Civ. P. 56(d).  Further, Alcoa opposes the conversion of its motion to one for summary judgment (MTD Reply (Dkt. # 12) at 5-6), and has indicated that it intends to file a motion for summary judgment "at the appropriate time" (SJ Resp. at 8 n.2).

1    doubtful whether words create a contractual obligation or a condition precedent, the court

2    should interpret them as creating a contractual obligation.  *Ross v. Harding*, 391 P.2d

3    526, 531 (Wash. 1964).  However, words such as "provided that," "on condition,"

4    "when," "so that," "while," "as soon as," and "after" suggest a conditional intent and not

5    a contractual obligation or promise.  *Jones Assocs., Inc. v. Eastside Props., Inc.*, 704 P.2d

6    681, 684 (Wash. Ct. App. 1985) (citing *Vogt v. Hovander*, 616 P.2d 660, 666 (Wash. Ct.

7    App. 1979)).  Words such as "subject to" and "contingent upon" operate similarly.  *See*

8    *Tacoma Northpark*, 96 P.3d at 458.  Nevertheless, "such expressions are not necessary if

9    the contract is of such a nature as to show that the parties intended to provide for a

10   condition precedent."  *Parthow v. Mathews*, 261 P.2d 394, 398 (Wash. 1953).

11        Here, the parties dispute whether they intended termination to be a condition

12   precedent to severance pay.  In essence, the Olivers argue that the parties agreed that his

13   employment with Alcoa would end on March 31, 2016, and Alcoa offered Mr. Oliver a

14   bonus if he stayed in his position until March 31, 2016, and agreed to release any claims

15   he might have against Alcoa.  (*See* Oliver Decl. ¶ 9 ("[M]y understanding was that Alcoa

16   and I had agreed that my employment would end on March 31, 2016 and that I would

17   receive the severance amount contained in the Memorandum."); MSJ at 3 ("The

18   Memorandum laid out three key terms of the Contract:  that (1) Mr. Oliver's last day of

19   employment would be March 31, 2016, after which he would be entitled to severance of

20   $6,176.31; and that if (2) Mr. Oliver signed a release of claims (the Separation

21   Agreement); (3) Mr. Oliver would receive enhanced severance pay in the amount of

22   $80,292.00.").)

ORDER- 12

1   Alcoa on the other hand argues that language contained in the Memorandum and

2   Separation Agreement indicates the parties' intent that Mr. Oliver's termination was a

3   condition precedent to the receipt of any severance payment.  (*See* MTD at 9-10; MTD

4   Reply at 7-8.)  First, the Memorandum states that it "provides important details" about

5   Mr. Oliver's "separation from Alcoa."  (Am. Compl. Ex. A at 2.)  Second, the title

6   "Separation Agreement" itself indicates that it governs the terms of a separation between

7   Mr. Oliver and Alcoa.  (*Id.* at 4; MTD Reply at 7.)   Third, the Separation Agreement

8   states that "severance or salary replacement benefits . . . are intended to provide an

9   economic bridge during possible unemployment and not as a compensation for services

10  previously rendered."  (Am. Compl. Ex. A at 4; MTD at 10; MTD Reply at 7.)

11  The court is not persuaded that Alcoa is entitled to dismissal based solely on the

12  language contained in the Memorandum and Separation Agreement divorced from any

13  association with the ISP.  First, neither the Memorandum nor the Separation Agreement

14  utilizes the terms that Washington courts have found suggest a conditional intent and not

15  a contractual promise, or any such similar words.  *See Jones Assocs.*, 704 P.2d at 684

16  (referring to "provided that," "on condition," "when," "so that," "while," "as soon as,"

17  and "after"); *Tacoma Northpark*, 96 P.3d at 458 (referring to "subject to" and "contingent

18  upon").  Although the Memorandum states that it "provides important details" about Mr.

19  Oliver's "separation from Alcoa" (Am. Compl. Ex. A at 2), there is no express condition

20  in either of these documents that Mr. Oliver must be terminated or the plant must be

21  closed for him to receive the listed benefits.  The Memorandum also states that Mr.

22  Oliver "will receive severance pay in accordance with the Company's Severance Pay

1 Plan" (*id.*), but since the court does not have "the Company's Severance Plan" before it

2 in the context of this motion to dismiss, this statement provides no basis for dismissal

3 either.

4       Further, even the language Alcoa cites in support of its motion refers to Mr.

5 Oliver's "possible unemployment."  It may be that this language refers to the possibility

6 that Mr. Oliver would find new employment following his termination from Alcoa.

7 However, the court suspects that the Olivers would argue that the language indicates that

8 Alcoa knew that it might not terminate Mr. Oliver on March 31, 2016, but nevertheless

9 decided to offer him the separation pay as an incentive to remain with the company until

10 March 31, 2016, and to waive any claims he might otherwise have.  In other words, the

11 Olivers contend that "in preparing for the curtailment, Alcoa sought to stabilize key

12 personnel by securing them as employees until March 31, 2016."  (*See, e.g.*, MSJ Reply

13 (Dkt. # 23 ) at 1-2); *see also Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d

14 1313, 1317-18 (9th Cir. 1997) (affirming grant of summary judgment to employee where

15 contract provided that she would receive "stay on bonus" and severance pay if she

16 worked through a specified date despite anticipated plant closure and termination, and

17 where the contract "contain[ed] no condition that the employees be terminated, that there

18 be a break in employment, or that the Warehouse close down.").

19       The court is mindful that "[w]here doubt exists as to whether the parties have

20 created a promise or an express condition," Washington precedent requires the court to

21 "interpret the language in question to create a promise."  *Lokan & Assocs., Inc. v. Am.*

22 *Beef Processing, LLC*, 311 P.3d 1285, 1289 (Wash. Ct. App. 2013) (citing *Ross*, 391 P.2d

1   at 531).  Further, ambiguous contract language is strictly construed against the drafter,

2   *Jones Assocs.*, 704 P.2d at 685, which in this case is Alcoa.  Thus, based solely on the

3   language contained in the Memorandum and Separation Agreement, and absent any

4   context provided by the ISP or other relevant extrinsic evidence, the court cannot

5   conclude that Alcoa is entitled to the dismissal of Mr. Oliver's claims.  Accordingly, the

6   court denies both of Alcoa's motions to dismiss.[6]

7   **B.  The Olivers' Motion for Summary Judgment**

8         The Olivers seek summary judgment that (1) the Memorandum and Separation

9   Agreement, standing alone, are unambiguous and Alcoa breached their terms (*id.* at 8-

10  11), (2) the ISP is not a part of Mr. Oliver's Memorandum and Separation Agreement

11  with Alcoa (MSJ at 11-13), and (3) Alcoa willfully withheld wages from Mr. Oliver

12  pursuant to RCW 49.52.070 entitling Mr. Oliver to double damages and attorney's fees

13  under RCW 49.52.070 (MSJ at 14).  Alcoa opposes the Olivers' motion (*see generally*

14  MSJ Resp.), but does not seek an entry of summary judgment in its favor at this time.

15  (MSJ Resp. at 8 n.2 ("For the reasons stated herein, it is Alcoa, not Plaintiffs, that would

16  be entitled to summary judgment"; however, "Alcoa is not filing a cross-motion for

17  summary judgment at this time . . . , but reserves all rights to do so at the appropriate

18  _____

19       [6] Alcoa also asserts that it is entitled to dismissal because the Separation Agreement was
     not supported by consideration due to Alcoa's failure to make the payments and provide the
20   benefits allegedly promised to Mr. Oliver under the Plan or ISP.  (MTD at 10.)  The court finds
     this argument nonsensical because it equates Alcoa's alleged breach of the contract with a "lack
21   of consideration."  (MTD Reply at 8.)  Taken to its logical end, under Alcoa's argument anyone
     who breached a contract by failing to make payment could assert that he or she is entitled to
     dismissal for "lack of consideration."  This is obviously not the law.  The court, therefore, also
22   denies Alcoa's motion for dismissal on this ground.

1   time.").)  Alcoa also seeks relief under Federal Rule of Civil Procedure 56(d).  (*Id.* at 18-

2   21.)  Specifically, Alcoa asks the court to defer ruling on the Olivers' motion until Alcoa

3   has had an opportunity to conduct discovery.  (*Id.*)

4       **1.  Standard of Review**

5           Summary judgment is appropriate if the evidence, when viewed in the light most

6   favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

7   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

8   P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Torres v. City of Madera*,

9   648 F.3d 1119, 1123 (9th Cir. 2011) ("Summary judgment is appropriate only if, taking

10  the evidence and all reasonable inferences drawn therefrom in the light most favorable to

11  the non-moving party, there are no genuine issues of material fact and the moving party is

12  entitled to judgment as a matter of law.").  The moving party bears the initial burden of

13  showing that there is no genuine issue of material fact and that he or she is entitled to

14  prevail as a matter of law.  *Celotex*, 477 U.S. at 323; *Furnace v. Sullivan*, 705 F.3d 1021,

15  1026 (9th Cir. 2013).  If the moving party meets his or her burden, the non-moving party

16  "must make a showing sufficient to establish a genuine dispute of material fact regarding

17  the existence of the essential elements of his case that he must prove at trial" in order to

18  withstand summary judgment.  *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

19  In judging evidence at the summary judgment stage, the court does not make credibility

20  determinations or weigh conflicting evidence, but rather views all evidence and draws all

21  inferences in the light most favorable to the non-moving party.  *T.W. Elec. Serv., Inc., v.*

22  *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing *Matsushita*

1    *Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *see also Hrdlicka v.*

2    *Reniff*, 631 F.3d 1044, 1048, 1051 (9th Cir. 2011).

3        **2.  The Memorandum and Separation Agreement**

4        The Olivers argue that (1) the Memorandum and Separation Agreement are the

5    sole documents governing the agreement between Mr. Oliver and Alcoa and (2) these

6    documents clearly and unambiguously provide that Mr. Oliver's employment was to

7    terminate on March 31, 2016, and Mr. Oliver would receive an enhanced severance

8    payment of $80,292.00 in exchange for signing a release of his potential claims.  (MSJ at

9    9.)  The Olivers contend that Alcoa breached this contract when Alcoa "inform[ed] Mr.

10   Oliver that [it] would not 'initiate' his separation on March 31, 2016[,] as agreed and by

11   failing to pay him the promised severance."  (*Id.*)

12       Alcoa responds that the Memorandum and Separation Agreement provide that

13   termination of Mr. Oliver's employment was a condition precedent to the Alcoa's

14   obligation to pay any severance.  (MSJ Resp. at 9.)  In addition, Alcoa argues that the

15   Memorandum and Separation Agreement incorporate Alcoa's Severance Pay Plan, which

16   is also known as the ISP, and the ISP unambiguously provides that payment of severance

17   benefits is conditioned on the employee's separation from employment.  (*Id.* at 10-15.)

18       The court first considers whether the Memorandum and Separation Agreement

19   stand alone or incorporate other documents or terms.  Under Washington law,

20   incorporation by reference allows parties to incorporate contractual terms by reference to

21   a separate agreement or document.  *W. Wash. Corp. of Seventh-Day Adventists v.*

22   *Ferrellgas, Inc.*, 7 P.3d 861, 865 (Wash. Ct. App. 2000).  Incorporation by reference

1    must be "clear and unequivocal." *Id.* (citing *Santos v. Sinclair*, 884 P.2d 941, 943-44

2    (Wash. Ct. App. 1994)).  It must be clear that the parties had knowledge of and assented

3    to the incorporated terms.  *Id.*

4          Here, the Memorandum states:  "You will receive severance pay in accordance

5    with the Company's Severance Pay Plan."  (Am. Compl. Ex. A at 2.)  Similarly, the

6    Separation Agreement defines "severance or salary replacement benefits" as the "Plan"

7    and states that Mr. Oliver will receive benefits "provided in the Plan."  (*Id.* at 4.)  He also

8    agrees to waive and release any claims he has against Alcoa "[i]n consideration for the

9    payments and benefits provided to [him] in the Plan."  (*Id.*)

10         In *Ferrellgas*, the contract at issue stated that the work would "be performed in

11   accordance with the 'Project Contract Documents' or the 'Contract Documents.'"  7 P.3d

12   at 865.  The court held that this language "clearly and unequivocally" incorporated the

13   "Contract Project Documents" and the "Contract Documents" into the parties' contract.

14   *Id.*  Similarly, this court holds that the use of the terms "in accordance with" in the

15   Memorandum, which is identical to the language used in the contract in *Ferrellgas*,

16   clearly and unequivocally incorporates "the Company's Severance Pay Plan" into the

17   Memorandum.  The court also holds that use of the terms "provided in the Plan" in the

18   Separation Agreement clearly and unequivocally incorporates the "Plan" into the

19   Separation Agreement.[7]

20   _____

21        [7] In addition, the court notes that the Memorandum states that "[t]o receive an enhanced
22   separation pay package, you must sign the attached written Separation Agreement releasing the
     Company from future claims."  (Am. Compl. Ex. A at 2.)  This statement clearly and

1    Further, the court agrees with Alcoa that ignoring the Memorandum's reference to

2  "the Company's Severance Pay Plan" or the Separation Agreement's reference to the

3  "Plan" would render these terms superfluous.  (*See* SJM Resp. at 12.)  Under Washington

4  law, a contract interpretation that gives effect to all the words of a contract is favored

5  over one that would render some words meaningless or ineffective.  *Stevens v. Sec. Pac.*

6  *Mortg. Corp.*, 768 P.2d 1007, 1015 (Wash. Ct. App. 1989); *Seattle-First Nat'l Bank v.*

7  *Westlake Park Assocs.*, 711 P.2d 361, 364 (Wash. Ct. App. 1985).

8    Thus, on these grounds, the court denies the Olivers' request for summary

9  judgment that the Memorandum and Separation Agreement, standing alone,

10 unambiguously provide that Alcoa agreed to pay severance to Mr. Oliver even if he were

11 not separated from employment.  The court does so because the Memorandum

12 unambiguously does not stand alone, but rather incorporates by reference "the

13 Company's Severance Pay Plan" or the "Plan."[8]

14

15

---

16 unequivocally links the Memorandum and Separation Agreement, since the latter is "attached" to the former and incorporates the Separation Agreement into the Memorandum by reference.

17    [8] Mr. Oliver asserts that the court should not rule that Memorandum and Separation
18 Agreement incorporate "the Company's Severance Pay Plan" because he asked Alcoa's human resource manager if there were any documents other than the Memorandum and Separation Agreement that he could review to understand how the contract and severance pay worked, and
19 she told him that he had everything he needed.  (Oliver Decl. ¶ 6.)  In so arguing, Mr. Oliver is attempting to use extrinsic evidence to show an intention independent of the instrument or to
20 vary, contradict, or modify the written word.  *See Ferrellgas*, 7 P.3d at 866.  This is an improper use of extrinsic evidence.  *See id.*  Further, the court notes that the Separation Agreement itself
21 recites that Mr. Oliver "*acknowledge[s] that [he] received a summary of Plan provisions describing the eligibility requirements for benefits under the Plan, and have also received a summary of those employees eligible and ineligible for benefits based on Job Classification and*
22 *Age*." (Am. Compl. Ex. A at 5 (italics in original).)  Thus, Mr. Oliver's testimony would appear

### 3.   The ISP

The conclusion, however, that the Memorandum incorporates "the Company's Severance Pay Plan" does not end the court's analysis.  Once the *Ferrellgas* court had determined that the contract at issue incorporated the "Contract Project Documents" or the "Contract Documents," the next issue the *Ferrellgas* court resolved was what the parties intended those terms to mean.  7 P.3d at 865.  Similarly, the critical issue in this case is the parties' intention concerning the meaning of "the Company's Severance Pay Plan" or the "Plan" as those terms are used in the Memorandum and Separation Agreement.

Alcoa argues that these terms refer to the ISP.  (*See* SJM Resp. (Dkt. # 18) at 15 (The ISP "is Alcoa's only severance plan for salaried employees at the Plant like Mr. Oliver.") (citing Hughes Decl. ¶ 10).)  The Olivers assert that the court should not consider the ISP as part of the contract between the parties because the terms "the Company's Severance Pay Plan" and the "Plan" are ambiguous and therefore should be construed against Alcoa.  (MSJ at 13.)  The Olivers, however, do not offer any alternative meaning for these terms.

The court's primary purpose in interpreting a contract is to determine the parties' intent.  *U.S. Life Ins. Co. v. Williams*, 919 P.2d 594, 597 (Wash. 1996).  Washington courts use the "context rule" of interpretation.  *Berg v. Hudesman*, 801 P.2d 222, 229 (Wash. 1990).  Under this rule, extrinsic evidence may be admissible to give meaning to

to contradict this part of the written contract as well, which is not permitted under Washington law.  *See Ferrellgas*, 7 P.3d at 866.

1    the contract language. *Hollis v. Garwall, Inc*., 974 P.2d 836, 843 (Wash. 1999). Thus,

2    the court determines intent "not only from the actual language of the agreement, but also

3    from 'viewing the contract as a whole, the subject matter and objective of the contract, all

4    the circumstances surrounding the making of the contract, the subsequent acts and

5    conduct of the parties to the contract, and the reasonableness of respective interpretations

6    advocated by the parties.'" *Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc.*, 844 P.2d

7    428, 432 (Wash. 1993) (quoting *Berg*, 801 P.2d 222, 228 (quoting *Stender v. Twin City*

8    *Foods, Inc*., 510 P.2d 221, 225 (Wash. 1973))).

9        Extrinsic evidence may be used whether or not the contract language is

10   ambiguous. *U.S. Life Ins. Co*., 919 P.2d at 597 (citing *Berg*, 801 P.2d at 230). However,

11   extrinsic evidence must be used to illuminate what was written, not what was intended to

12   be written. *Hollis*, 974 P.2d at 843 (citing *Nationwide Mut. Fire Ins. Co. v. Watson*, 840

13   P.2d 851, 857 (Wash. 1992)). Thus, extrinsic evidence may not be used (1) to establish a

14   party's unilateral or subjective intent as to the meaning of a contract word or term; (2) to

15   show an intention independent of the instrument; or (3) to vary, contradict, or modify the

16   written word. *Ferrellgas*, 7 P.3d at 866. When extrinsic evidence is used to interpret a

17   contract, summary judgment is appropriate only if one reasonable inference can be drawn

18   from the extrinsic evidence. *Id.*

19       Both parties rely, in part, on extrinsic evidence to support their arguments. Alcoa

20   asserts that the parties intended the terms "the Company's Severance Pay Plan" or the

21   "Plan" to mean the ISP based on the testimony of its employees. For example, one of

22   Alcoa's employee relations advocates testifies that "[s]alaried employees . . . receive

1    severance pay only in accordance with the provisions of . . . [the ISP]."  (Furnas Decl.

2    ¶ 3.)  He further testifies that the references to the "Company's Severance Pay Plan" in

3    the Memorandum and to the "Plan" in the Severance Agreement" are to the ISP.  (*See id.*

4    ¶ 4.)  Indeed, Alcoa does not have any other large-scale severance plan.  (Hughes Decl.

5    (Dkt. # 19) ¶ 10.)

6        In addition, Alcoa's human resources manager testifies that, initially, Mr. Oliver's

7    position was not included in the curtailment at the plant.  (*Id.* ¶ 8.)  According to Alcoa's

8    human resources manager, Mr. Oliver approached her and indicated his desire to be

9    included in the curtailment.  (*Id.*)  Alcoa's human resources manager informed Mr. Oliver

10   that if another employee whose position was being eliminated was willing to take Mr.

11   Oliver's job, then Mr. Oliver might be eligible for participation in the curtailment.  (*Id.*)

12   The human resources manager "clearly informed Mr. Oliver that his participation in the

13   [c]urtailment was contingent upon another employee's position being eliminated as part

14   of the curtailment, which employee would then fill Mr. Oliver's position."  (*Id.*)  Alcoa

15   asserts that these facts demonstrate that Mr. Oliver understood, consistent with the ISP,

16   that the termination of his employment was a necessary precondition to his receipt of

17   severance pay and undercuts his contention that the parties intended that he receive

18   severance pay even if he was not severed from employment.  (MSJ Resp. at 14.)  Mr.

19   Oliver denies that he had any such conversation with Aloca's human resources manager,

20   knew what was going to happen with his position, or knew that someone had agreed to

21   take it over.  (*See generally* 2d Oliver Decl. (Dkt. # 24).)

22

ORDER- 22

1    The Olivers counter that if Alcoa had intended the terms "the Company's

2  Severance Pay Plan" and the "Plan" to mean the "ISP," then Alcoa could have expressly

3  used the term—ISP—in the Memorandum and Separation Agreement, but it did not.

4  (MSJ at 13.)  The Olivers assert that because Alcoa drafted the documents at issue, to the

5  extent the terms "the Company's Severance Pay Plan" and the "Plan" are ambiguous, the

6  terms must be construed against Alcoa.  *See Jones Assocs.*, 704 P.2d at 685.  This

7  argument might help the Olivers if they had an alternate interpretation of the terms to

8  offer, but they do not.  Nowhere do they suggest an alternative meaning for these terms.

9  (*See generally* MSJ; *see also* MSJ Reply.)  As the court already noted, a contract

10  interpretation that gives effect to all the words of a contract is favored over one that

11  would render some words meaningless or ineffective.  *Stevens*, 768 P.2d at 1015; *Seattle-*

12  *First Nat'l Bank*, 711 P.2d at 364.  The court is unwilling to ascribe no meaning to these

13  terms when a reasonable one is offered.

14    Further, the notion that the Memorandum and Separation Agreement must

15  explicitly use the formal title of a document or the term "Involuntary Separation Plan" or

16  "ISP" in order to validly incorporate the document by reference into the contract is an

17  incorrect reading of Washington law.  Although the use of these terms may have

18  provided more clarity, the failure to do so is not dispositive on the issue.  As noted above,

19  Washington follows the context rule of contract interpretation.  *See Berg*, 801 P.2d 222,

20  229.  Thus, when interpreting the meaning of "the Company's Severance Pay Plan" and

21  the "Plan," the court may look to a variety of extrinsic evidence.  *Scott Galvanizing*, 844

22  P.2d at 432.  Indeed, other courts have incorporated terms or documents by reference

1  based on the parties' description thereof without requiring specific reference to the

2  document's formal name or the title.  *See, e.g.*, *Santos v. Sinclair*, 884 P.2d 941, 943-44

3  (Wash. Ct. App. 1994) (holding that reference to the legal description of the property

4  containing an easement was sufficient to incorporate the easement into a title insurance

5  policy, despite insurer's argument that policy documents did not "explicitly describe any

6  easement being insured"); *Brown v. Poston*, 269 P.2d 967, 968,  (Wash. 1954) (holding

7  that where subcontractor contracted to perform plastering work on building "as per plans

8  and specifications," such plans and specifications, as those words were interpreted by the

9  court, were incorporated by reference into the contract).

10      The Olivers also argue, on apparent equitable grounds,[9] that the court should

11  disregard the ISP because Alcoa "concealed" the document from Mr. Oliver by failing to

12  provide it to him when he asked if there were any other documents he should review to

13  aid his understanding of the contract.  (*See* MSJ at 12; *see also* Oliver Decl. ¶ 6.)  Alcoa,

14  however, contests these facts.  (*See* MSJ Resp. at 16-17.)  Alcoa provides evidence that

15  the ISP is used to administer severance benefits at its facilities nationwide, including at

16  the plant at issue.  (Hughes Decl. ¶ 10.)  Thus, Alcoa asserts that the Olivers cannot

17  establish that Alcoa concealed a policy that it relies on nationwide.  (MSJ Resp. at 16.)

18      Mr. Oliver also testifies that he searched Alcoa's website in an effort to find the

19  ISP or any other documents related to severance pay but could find nothing.  (Oliver

20  _____

21      [9] The Olivers provide no case authority or legal theory about how such evidence is
relevant to their causes of action.  The court assumes in the absence of any such argument that
22  the Olivers are advancing this argument on equitable grounds.  The court makes no ruling
regarding the viability of such an argument at this time.

1    Decl. ¶ 13.)  Alcoa's human resources superintendent testifies, however, that he has

2    known Mr. Oliver for over 20 years, has had many conversations with Mr. Oliver about

3    employment-related matters, and that Mr. Oliver has his office phone number, e-mail

4    address, and cell phone number.  (2d Furnas Decl. (Dkt. # 20) ¶ 5.)  Alcoa's human

5    resources superintendent informed Mr. Oliver and all other salaried employees that he

6    was available to discuss the plant curtailment, the calculation of their severance

7    payments, and answer any other questions they might have.  (*Id.* ¶ 3.)   He further

8    testifies that if Mr. Oliver had asked him for a copy of the "Plan" or ISP, he would have

9    provided it, but Mr. Oliver never asked.  (*Id.* ¶ 5.)  Thus, Alcoa argues that Mr. Oliver's

10   assertion that he searched Alcoa's website and was unable to find a copy of the ISP is a

11   red herring.  (*See* Oliver Decl. ¶ 13.)  Alcoa argues that the Olivers "should not be

12   permitted to claim concealment or any related theory by willfully ignoring avenues

13   available to them to obtain information . . . ."  (MSJ Resp. at 17.)

14          Based on the foregoing, the court concludes that there are material issues of fact

15   concerning whether the ISP was incorporated into the Memorandum and Separation

16   Agreement through use of the terms "the Company's Severance Pay Plan" and the

17   "Plan."[10]  Accordingly, the court denies the Olivers' motion for summary judgment on

18   this issue.[11]

19

20   _____

21          [10] The court is constrained from entering summary judgment on this issue in favor of
     Alcoa because Alcoa did not move for summary judgment, expressly asked the court not to

22   convert its motions to dismiss into motions for summary judgment, and stated that it intended to
     move for summary judgment at an appropriate time in the future.  *See supra* note 5.  In any

1     **4.   Willful Withholding of Wages**

2         The Olivers also argue that the severance pay at issue qualifies as "wages" and

3 that Alcoa's beach of "the unambiguous language in the Contract" represents a "willful

4 withholding of wages" entitling the Olivers to double damages, costs, and attorney's fees

5 under RCW 49.52.050 and RCW 49.52.070.  (MSJ at 14.)  Because the court has denied

6 the Olivers' motions for summary judgment with respect to the substance of their

7 underlying claims, the court also denies the Olivers' motion for summary judgment on its

8 claim for double damages, costs, and attorney's fees.

9     **5.   Federal Rule of Civil Procedure 56(d)**

10         The court also denies the Olivers' motion for summary judgment pursuant to

11 Federal Rule of Civil Procedure 56(d).  Under Rule 56(d), if a nonmovant cannot present

12 facts essential to justify its opposition, "the court may:  (1) defer considering the motion

13 or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3)

14 issue any other appropriate order."  Fed. R. Civ. P. 56(d).  The Olivers filed their motion

15 for summary judgment before the parties had engaged in a Federal Rule of Civil

16

---

17 event, this case is in an early procedural posture and granting summary judgment to any party at
this juncture may be premature.  *See infra* § III.B.5 (discussing Fed. R. Civ. P. 56(d)).

18

19     [11] Alcoa asks the court to strike paragraph 14 of Mr. Oliver's declaration in which he
states that he "learned that Alcoa is paying the promised severance to other salaried employees
whose positions were not eliminated and for whose positions Alcoa is recruiting replacements."

20 (*See* MSJ Resp. at 21-22; Oliver Decl. ¶ 14.)  Alcoa argues that Mr. Oliver has no personal
knowledge concerning the administration of Alcoa's severance or recruiting programs and is

21 evidently repeating hearsay.  (MSJ Resp. at 21-22.)  This portion of Mr. Oliver's declaration
played no role in the court's decision on the Olivers' motion.  In any event, the court denied the

22 motion, which eliminates any possible prejudice to Alcoa.  Accordingly, the court denies Alcoa's
request as moot.

ORDER- 26

Procedure 26(f) conference, provided initial disclosures, or established a discovery plan. Alcoa asserts that it should be permitted to depose Mr. Oliver about his understanding that (1) his participation in the curtailment was voluntary, (2) the only reason he was included in the curtailment was because another employee agreed to assume his position, and (3) he is entitled to both continued employment and a severance payment.  (MSJ Resp. at 19.)  In addition, Alcoa asserts that it should be allowed to explore Mr. Oliver's credibility and the existence and nature of the Olivers' damages.  (*Id.* at 20-21.)  For example, Alcoa would like to engage in discovery concerning the alternate employment that Mr. Oliver allegedly secured following the initial announcement of the curtailment. (*Id.* at 21.)  Finally, Alcoa has not yet answered the amended complaint, but asserts that it intends to raise a number of affirmative defenses that will also require discovery.  (*Id.* at 20.)

When a party moves for summary judgment before a meaningful opportunity for discovery, district courts may "fairly freely" grant a Rule 56(d) motion.  *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).  Here, Alcoa has had no meaningful opportunity for discovery. Thus, even if the court had not otherwise substantively denied the Olivers' motion for summary judgment, the court would deny the motion on Rule 56(d) grounds.

## C.  Alcoa's Motion for a Protective Order

After Alcoa filed its motions to dismiss and the Olivers filed their motion for summary judgment, Alcoa filed a motion for a protective order to stay discovery pending the court's resolution of these motions.  (*See generally* MTS.)  Alcoa argued that because

1   both parties believed that the case could be resolved on the basis of their respective early

2   dispositive motions, the court should enter an order staying all discovery pending the

3   court's decisions.  (*See id.*)  The court has now denied both of Alcoa's motions to dismiss

4   and the Olivers' motion for summary judgment.  Alcoa's motion for a stay of discovery

5   pending those orders is now moot, and accordingly the court denies it.

6                           **IV.   CONCLUSION**

7         Based on the foregoing analysis, the court DENIES Alcoa's motions to dismiss the

8   Olivers' claims (Dkt. ## 5, 14) and the Olivers' motion for summary judgment (Dkt. # 9).

9   The court also DENIES Alcoa's motion for a protective order staying discovery as

10  MOOT (Dkt. # 15).

11        Dated this 9th day of September, 2016.

12

13

14                                                _____

                                             JAMES L. ROBART

15                                               United States District Judge

16

17

18

19

20

21

22