UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL OLIVER, et al.,

                Plaintiffs,

v.

ALCOA, INC.,

                Defendant.

CASE NO. C16-0741JLR

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
DENYING PLAINTIFFS'
MOTION FOR
RECONSIDERATION AND
SUMMARY JUDGMENT

## I. INTRODUCTION

Before the court are three motions: (1) Defendant Alcoa, Inc.'s ("Alcoa") motion for summary judgment (Alcoa Mot. (Dkt. # 32)); (2) Plaintiffs Michael Oliver and Kris Oliver's (collectively, "the Olivers") motion for reconsideration of the court's September 12, 2016, order and for summary judgment (Olivers Mot. (Dkt. # 40); *see also* 9/12/16 Order (Dkt. # 29)); and (3) Aloca's motion to stay the proceedings (MTS (Dkt. # 47)). The court has considered the motions, the parties' submissions filed in support of and opposition to the motions, the relevant portions of the record, and the applicable law.

1  Being fully advised,[1] the court GRANTS Alcoa's motion for summary judgment,

2  DENIES the Olivers' motion, and DENIES Alcoa's motion to stay as moot.

## II.   BACKGROUND

4  The suit arises out of a planned curtailment of the workforce at Alcoa's Intalco

5  Works aluminum smelter in Ferndale, Washington, in November 2015.  (Hughes Decl.

6  (Dkt. # 19) ¶ 5.)  On December 18, 2015, in preparation for the planned layoffs at the

7  Ferndale plant, Mr. Oliver executed two documents, titled "Memo[random]" and

8  "Separation Agreement."  (FAC Ex. A (Dkt. # 8-1) at 2-3 (attaching Memorandum), 4-5

9  (attaching Separation Agreement).)  The Memorandum states that Mr. Oliver's "last day

10  of employment will be 3/31/2016" and that he "will receive severance in accordance with

11  the Company's Severance Pay Plan" in the amount of $80,292.00.  (Id. Ex. A at 2.)  The

12  Memorandum states that "[t]o receive an enhanced separation pay package, you must

13  sign the attached Separation Agreement releasing the Company from future claims."

14  (Id.)

15  The Separation Agreement states that Mr. Oliver will receive benefits "under the

16  Plan" or as "provided in the Plan, which are intended to provide an economic bridge

17  during possible unemployment and not as compensation for services previously

18  rendered."  (Id. at 4-5.)  The Separation Agreement also states that Mr. Oliver

19  "acknowledge[s] . . . receiv[ing] a summary of Plan provisions describing the eligibility

20  //

21  ───────────────────
   [1] No party has requested oral argument on any of the pending motions, and the court does
22  not consider oral argument necessary for its determination of any of the motions.  See Local
   Rules W.D. Wash. LCR 7(b)(4).

requirements for benefits under the Plan . . . ." (*Id.* at 5.) The Separation Agreement encourages the employee to discuss the agreement with a private attorney,[2] and contains an acknowledgement that the employee had the opportunity to seek the advice of counsel before signing it. (*Id.*)

In a previous order,[3] the court held that "the use of the terms 'in accordance with [the Company's Severance Pay Plan]' in the Memorandum . . . clearly and unequivocally incorporates 'the Company's Severance Pay Plan' into the Memorandum," and the "use of the terms 'provided in the Plan' in the Separation Agreement clearly and unequivocally incorporates the 'Plan' into the Separation Agreement." (9/12/16 Order at 18; *see also id.* at 19 ("[T]he Memorandum unambiguously does not stand alone, but rather incorporates by reference 'the Company's Severance Pay Plan' or the 'Plan.'").)[4] Indeed, the court held that "ignoring the Memorandum's reference to 'the Company's Severance Pay Plan' or the Separation Agreement's reference to the 'Plan' would improperly render these terms superfluous under Washington law. (*Id.* at 19.) The court,

//

---

[2] The Separation Agreement states: "I encourages me to discuss understand that the Company this Separation Agreement with my private attorney before signing it by me." (FAC Ex. A at 4.) There are obvious typographical errors in this sentence. The Separation Agreement also states: "I acknowledge . . . that I have had an opportunity to seek counsel with an attorney and have had sufficient time to read the Separation Agreement and make a decision regarding acceptance of its terms." (*Id.* at 5 (capitalization omitted).)

[3] On September 12, 2016, the court denied Alcoa's motions to dismiss the Olivers' claims and the Olivers' first motion for summary judgment. (*See* 9/12/16 Order (Dkt # 29); *see also* 1st MTD (Dkt. # 5); 2d MTD (Dkt. # 14); 1st SJ Mot. (Dkt. # 9).)

[4] The court further held that the Memorandum and Separation Agreement are "unequivocally link[ed] . . . since the latter is 'attached' to the former and incorporates the Separation Agreement into the Memorandum by reference." (9/12/16 Order at 18-19 n.7.)

1  however, did not determine at that time to which specific document these terms referred.

2  (*See id.* at 20-25.)  Thus, the identity of the document that the parties "clearly and

3  unequivocally" incorporated by reference into their agreement is a primary focus of the

4  parties' present motions.  (*See* Olivers Mot. at 12-14; Aloca Mot. at 4-5.)

5        Throughout this litigation, Alcoa has consistently argued that the terms "the

6  Company's Severance Pay Plan" and the "Plan" in the Memorandum and Separation

7  Agreement refer to Alcoa's Involuntary Separation Plan ("ISP").  (Alcoa Mot. at 3;

8  9/12/16 Order at 23 (indicating that Alcoa's proffered interpretation of the terms

9  "Company's Severance Plan" and the "Plan" as referring to the ISP is reasonable);

10  Furnas Decl. (Dkt. # 6) ¶¶ 3-4, Ex. A (attaching copy of ISP).)  The ISP states that it

11  "provides a lump-sum cash benefit in the event of a permanent separation from

12  employment."  (Furnas Decl. ¶¶ 3-4, Ex. A at 6.)  The ISP also states that "[t]o receive

13  ISP benefits, you must incur a permanent separation of employment and meet the

14  conditions for . . . benefits."  (*Id.*; *see also id.* Ex. A at 7 ("To receive ISP benefits, you

15  must incur a permanent separation . . . .").)  The ISP further defines a "permanent

16  separation" as requiring "the termination of employment," and expressly provides that

17  "[i]n no event does a permanent separation from employment occur if the employee is

18  offered suitable employment by Alcoa, a subsidiary, or a successor employer."  (*Id.* Ex.

19  A at 10.)

20        It is undisputed that Alcoa emailed a copy of the ISP to Mr. Oliver in August

21  2012.  (Gilmore Decl. (Dkt. # 34) ¶¶ 3-5, Exs. A-B).)  The email described and provided

22  //

1  a link to a copy of the ISP on the Internet. (*Id.* ¶ 5, Ex. B.) The email also advised Mr.

2  Oliver to retain a copy of the email for future reference. (*Id.*) Although Mr. Oliver does

3  not recall this email, he does not dispute that he received it. (Hobbs Decl. (Dkt. # 44) ¶ 2,

4  Ex. A ("Oliver Dep.") at 53:20-24.)

5        The Olivers maintain that the ISP is not incorporated into the Memorandum and

6  Separation Agreement. (*See* Olivers Mot. at 7.) Mr. Oliver testifies that, before he

7  signed the Memorandum and Separation Agreement, he asked Ms. Sandra Hughes,

8  Alcoa's Intalco Works Human Resources Manager, if there were any other documents

9  that he needed to review to understand how the Separation Agreement would work. (3d

10  Oliver Decl. (Dkt. # 36) ¶ 2.) Ms. Hughes recalls that Mr. Oliver was confused by the

11  page numbering, which indicated that the agreement contained 86 pages due to the use of

12  a mail merge. (Hughes Dep. (Dkt. # 41-2) at 61:15-25, 62:1-4.) Mr. Oliver was

13  concerned that he was missing pages from the Memorandum and Separation Agreement.

14  (1st Oliver Decl. (Dkt. # 10) ¶ 5 "[T]he bottom of the Memorandum stated that it was

15  pages 1 and 2 of 86 and I asked Ms. Hughes about the additional 84 pages that appeared

16  missing.").) Ms. Hughes testified that she reassured Mr. Oliver that there were "no

17  missing pages from his packet." (Hughes Dep. at 62:1-9; *see also* 1st Oliver Dep. ¶ 5

18  ("Ms. Hughes told me that she had printed off all of the employees' separation

19  agreements as a batch and that the other employees' offers were contained in the

20  remaining 84 pages.").) She also told Mr. Oliver that "[a]ll the information for the

21  agreement is included" in the documents he received. (Hughes Dep. at 63:4-22; *see also*

22  //

1  3d Oliver Decl. ¶ 2 ("[Ms. Hughes] assured me that there was nothing else to review and

2  no other relevant documents . . . .").)

3        Although Ms. Hughes testified that the term "the Company Severance Pay Plan"

4  referred to the ISP (*id.* at 56:3-4, 56:11-18, 59:2-6), she also acknowledged that she did

5  not explain this to Mr. Oliver, that an employee would not know the meaning of the

6  term—"the Company Severance Pay Plan"—from simply reading the Memorandum, and

7  that she has never included a copy of the ISP as a part of the separation packets she

8  distributed to Alcoa's employees (*id.* at 54:22-55:3, 59:7-20). She also knows of no

9  Alcoa document that defines either "the Company Severance Pay Plan" or the "Plan" as

10  the ISP. (*Id.* at 57:15-23.)

11        In his deposition, Mr. Oliver testifies that although he read the phrases "the

12  Company's Severance Pay Plan" and the "Plan" in the Memorandum and Separation

13  Agreement, and although he did not understand what these terms meant, he did not ask

14  anyone at Alcoa to what these terms referred. (Oliver Dep. at 30:13-6.) Instead, Mr.

15  Oliver declares that, based on Ms. Hughes's statements to him, he "felt assured that [he]

16  had all the documents and relevant information, and that 'the Company's Severance Pay

17  Plan' and 'the Plan' must be the legal terms for the documents he already had, meaning

18  the Memorandum and Separation Agreement together with the Older Workers Benefits

19  Protection Act Notice to Employees." (3d Oliver Decl. ¶ 2; *see also* Oliver Dep. at

20  32:8-13 ("I thought that those references were to the five pages that I had received. I

21  specifically asked [Ms. Hughes] if there was any other documents related to this

22  //

document that I should review or need to review to better understand this document. And she said there were none.").)

The only other Alcoa employee who spoke to Mr. Oliver about the Memorandum and Separation Agreement was Jair Furnas. (*See* Olivers Mot. at 6 (citing Furnas Dep. (Dkt. # 41-3)).) Mr. Furnas did not discuss the terms of the Memorandum and Separation Agreement but rather reviewed the severance payment amount with Mr. Oliver. (Furnas Dep. at 66:23-68:6.) When Mr. Furnas reviewed the amount of Mr. Oliver's anticipated severance pay, he used the ISP to make the calculation. (*See id.*) Mr. Furnas did not give a copy of the ISP to Mr. Oliver because Mr. Oliver did not ask for one (*id.* at 70:24-71:12), and like Ms. Hughes, Mr. Furnas is unaware of any Alcoa document that defines "the Company Severance Pay Plan" or the "Plan" as the ISP (*id.* at 75:21-76:8). Mr. Furnas did not explain to Mr. Oliver that Mr. Oliver's severance payment could be revoked or rescinded if the curtailment did not occur (*id.* at 71:13-72:2) because Mr. Furnas believes that

> . . . it's reasonable to assume that if there's no curtailment, no severance. You only get severance if you get severed. If you don't get severed, you don't get severance. And [he] never had anyone specifically ask . . . a question that would lead [him] to think they didn't understand that.

(*Id.* at 72:8-13.) Indeed, during his deposition, Mr. Oliver acknowledged that voluntary severance packages are benefits that employees who are severed from their employment receive. (Oliver Dep. at 22:14-18.)[5]

---

[5] Mr. Oliver's deposition testimony is as follows:

After a favorable improvement in market conditions, Alcoa cancelled its planned curtailment at the Intalco Works plant, and more than 400 employees retained their jobs. (*See* Hughes Decl. ¶ 11.) A few days later, on January 21, 2016, Mr. Furnas announced in an email that all "ISP/Severance offers are rescinded." (1st Oliver Decl. (Dkt # 10) ¶ 11, Ex. C.) Alcoa cancelled the anticipated severance payments to the salaried employees who had been scheduled to be severed but ultimately continued their employment, including Mr. Oliver. (*See* Hughes Decl. ¶ 13.) Mr. Oliver did not suffer a separation from his employment at Alcoa, but rather continued to work at the plant after his previously scheduled separation date of March 31, 2016. (*See id.* ¶ 11.) Mr. Oliver's pay, position, job duties, and all other terms of his employment at Alcoa remained the same. (*Id.*) Ultimately, Mr. Oliver voluntarily retired on May 31, 2016. (Oliver Dep. at 46:9-21.) At the time he retired, Alcoa did not eliminate Mr. Oliver's position. (*Id.* at 46:19-24.)

On February 4, 2016, Mr. Oliver sent an email to both Ms. Hughes and Mr. Furnas stating that "[n]othing in [Alcoa's Separation Agreement] allows Alcoa to rescind its offer" of an $80,292.00 severance payment to him. (1st Oliver Decl. ¶ 11, Ex. D.) He further demanded "confirmation in writing by Monday 2.15.16 that [Alcoa] will abide by [the] written agreement." (*Id.*) On February 8, 2016, Ms. Hughes sent an email in

---

Q:  . . . Voluntary severance packages . . . are benefits that employees who are severed from their employment receive, is that correct?

A: Yes.

(Oliver Dep. at 22:14-18.)

1    response stating that the "receipt of . . . ISP . . . benefits is based on the occurrence of an

2    involuntary separation" and that "[d]ue to continued operations, the Company w[ould]

3    not be initiating [his] separation on March 31." (*Id.* ¶ 12, Ex. D.)

4        On April 20, 2016, the Olivers filed a complaint in Whatcom County Superior

5    Court against Alcoa alleging claims for declaratory relief, specific performance, and

6    breach of contract. (Compl. (Dkt. # 1-1).) On May 23, 2016, Alcoa removed the

7    Olivers' complaint to this court. (Notice of Removal (Dkt. # 1).) On June 20, 2016, the

8    Olivers filed an amended complaint. (FAC (Dkt. # 8).) The Olivers' amended complaint

9    is identical to their original complaint except that the amended complaint adds a claim for

10   willful withholding of wages under RCW 49.52.050 and RCW 49.52.070. (*Compare*

11   Compl., *with* FAC.)

12       On May 31, 2016, Alcoa filed a motion to dismiss the Olivers' complaint. (1st

13   MTD.) Alcoa argued that the terms "the Company's Severance Pay Plan" and the "Plan"

14   in the Memorandum and Separation Agreement referred to the ISP, and the ISP states in

15   numerous places that employees are eligible to receive severance payments only if their

16   employment is severed. (*Id.* at 2-3.) After the Olivers amended their complaint, Alcoa

17   filed a second motion to dismiss the Olivers' added claim for willful withholding of

18   wages. (*See* 2d MTD.) The Olivers cross moved for summary judgment. (*See* 1st SJ

19   Mot.) In their motion, the Olivers argued that the ISP is not part of Mr. Oliver's contract

20   with Alcoa and that Mr. Oliver is entitled to receive the $80,292.00 severance payment

21   despite his continued employment with Alcoa. (*See generally id.*) As discussed above,

22   although the court denied both motions, the court ruled that the contract between Alcoa

1  and Mr. Oliver does not stand alone, but rather incorporates by reference "the Company's

2  Severance Pay Plan" or the "Plan" into the agreement. (*See* 9/12/16 Order at 17-19.)

3          On October 7, 2015, Alcoa filed a motion asking the court to grant it summary

4  judgment by ruling that (1) the terms "the Company's Severance Pay Plan" and the

5  "Plan" refer to and incorporate the ISP into the Memorandum and Separation Agreement,

6  and (2) the ISP precludes the payment of severance benefits to Mr. Oliver. (*See*

7  *generally* Alcoa Mot.) Before the court could rule on Alcoa's motion, however, the

8  Olivers filed a motion (1) for relief under Federal Rule of Civil Procedure 60(b) and

9  Local Civil Rule 7(h) from the court's first order denying Alcoa's motions to dismiss and

10  the Olivers' first motion for summary judgment and (2) for the entry of summary

11  judgment in their favor that the terms "the Company's Severance Pay Plan" and the

12  "Plan" in the Memorandum and Separation Agreement do not refer to the ISP, but rather

13  refer back to the Memorandum and Separation Agreement themselves. (*See* Olivers

14  Mot.) The court entered an order directing the Clerk to renote Alcoa's motion for the

15  same day as the Olivers' motion. (2/21/17 Order (Dkt. # 42) at 2 (citing Local Rules

16  W.D. Wash. LCR 7(k)).) The court now considers these motions.

17                                    **III.    ANALYSIS**

18  **A.  The Olivers' Request for Reconsideration of the Court's Prior Rulings**

19          Before addressing Alcoa's and the Olivers' cross motions for summary judgment,

20  the court examines the Olivers' request under Federal Rule of Civil Procedure 60(b) and

21  Local Civil Rule 7(h) for reconsideration of the court's prior ruling in this case. (*See*

22  //

1 Olivers Mot. at 7-12); Fed. R. Civ. P. 60(b); Local Rules W.D. Wash. LCR 7(h). As

2 discussed below, the court denies the Olivers' request for reconsideration.

### 1. Local Civil Rule 7(h)

4 The Olivers purport to bring their motion for reconsideration under Local Civil

5 Rule 7(h). (*See* Olivers Mot. at 1 (citing Local Rules W.D. Wash. LCR 7(h).) Local

6 Civil Rule 7(h) provides that motions for reconsideration "are disfavored" and "shall be

7 filed within fourteen days after the order to which it relates is filed." Local Rules W.D.

8 Wash. LCR 7(h)(1), (2). The court filed the order to which the Olivers' motion relates on

9 September 12, 2016. (*See* 9/12/16 Order.) The Olivers filed their motion for

10 reconsideration on February 16, 2017—more than five months after the court issued its

11 ruling. (*See* Olivers Mot.) Thus, the Olivers' motion for reconsideration is untimely

12 under the court's Local Rules.

### 2. Rule 60(b)

14 The Olivers also purport to bring their motion for reconsideration under Rule

15 60(b). (*See* Olivers Mot. at 1 (citing Fed. R. Civ. P. 60(b)).) Rule 60(b) provides that

16 "[o]n motion, the court may relieve a party or its legal representative from a final

17 judgment, order, or proceeding" for various specified reasons. Fed. R. Civ. P. 60(b). As

18 the requirement of a "final judgment, order, or proceeding" implies, a party may not

19 ordinarily bring a motion under Rule 60(b) "unless the order to be reconsidered is a final

20 ruling from which an appeal could have been taken." *United States v. Iron Mountain*

21 *Mines, Inc.*, 812 F. Supp. 1528, 1555 (E.D. Cal. 1992). An order denying summary

22 judgment is not a final appealable order within the scope of Rule 60(b). *Iron Mountain*,

1 | 812 F. Supp. at 1556; *see also McCarthy v. Mayo*, 827 F.2d 1310, 1318 (9th Cir. 1987)

2 | (stating that Rule 60(b) "cannot be used as a substitute for an appeal" where a party's

3 | argument "is nothing more than dissatisfaction with a ruling of the court."). Thus, Rule

4 | 60(b) is not a proper procedural vehicle for the Olivers' motion for reconsideration.

5 | **3. The Court's Plenary Power to Reconsider Prior Rulings**

6 | Although the Olivers may not bring their motion for reconsideration under either

7 | Local Civil Rule 7(h) or Rule 60(b), notwithstanding either rule, the court "retains

8 | plenary power to afford relief from interlocutory orders and judgments 'as justice

9 | requires.'" *See Iron Mountain*, 812 F. Supp. at 1555; *see also United States v. Jerry*, 487

10 | F.2d 600, 605 (3d Cir. 1973) (recognizing that "so long as the district court has

11 | jurisdiction over the case, it possesses inherent power over interlocutory orders, and can

12 | reconsider them when it is consonant with justice to do so"). Accordingly, pursuant to its

13 | plenary power, the court will analyze whether justice requires the court to reconsider its

14 | September 12, 2016, ruling as the Olivers request.

15 | **4. The Court's September 12, 2016, Ruling**

16 | In their first motion for summary judgment, the Olivers argued that: (1) the ISP is

17 | not a part of the Memorandum and Separation Agreement, (2) the Memorandum and

18 | Separation Agreement are the sole documents governing the agreement between Mr.

19 | Oliver and Alcoa, (3) the Memorandum and Separation Agreement, standing alone, are

20 | unambiguous, and (4) Alcoa breached the terms of these documents. (*See* 9/12/16 Order

21 | at 15, 17.) The court denied the Olivers' motion in total. (*See id.* at 25.) In doing so, the

22 | court rejected the Olivers' argument that the Memorandum and Separation Agreement

1   are the sole documents governing the agreement between Mr. Oliver and Alcoa. (*Id.* at

2   18.) Instead, the court held that (1) "the use of the terms 'in accordance with [the

3   Company's Severance Pay Plan]' in the Memorandum . . . clearly and unequivocally

4   incorporates 'the Company's Severance Pay Plan' into the Memorandum" and (2) the

5   "use of the terms 'provided in the Plan' in the Separation Agreement clearly and

6   unequivocally incorporates the 'Plan' into the Separation Agreement." (*Id.* (citing *W.*

7   *Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 7 P.3d 861, 865 (Wash. Ct.

8   App. 2000)).) The court further stated that (1) Alcoa offered a reasonable interpretation

9   of these terms as referring to the ISP (*see id.* at 23), (2) the Olivers, on the other hand,

10   failed to "suggest an alternative meaning for these same terms" (*id.*), and (3) the court

11   was "unwilling to ascribe no meaning to these terms where a reasonable one [wa]s

12   offered" (*id.*).

13        However, the court expressly declined to rule on the record before it at that time

14   that the terms "the Company's Severance Pay Plan" or the "Plan" refer to the ISP. (*Id.* at

15   25 ("[T]he court concludes that there are material issues of fact concerning whether the

16   ISP was incorporated into the Memorandum and Separation Agreement through use of

17   the terms "the Company's Severance Pay Plan" and the "Plan. Accordingly, the court

18   denies the Olivers' motion for summary judgment on this issue.").) Indeed, the court

19   held it was "constrained from entering summary judgment on this issue in favor of Alcoa

20   because Alcoa did not move for summary judgment, expressly asked the court not to

21   convert its motions to dismiss into a motion for summary judgment, and stated that it

22   intended to move for summary judgment at an appropriate time in the future." (*Id.* at 25

1  n.10.) The court further stated that the case was "in an early procedural posture" and thus

2  granting summary judgment at that time to any party might be premature. (*Id.* (citing

3  Fed. R. Civ. P. 56(d)).)

### 5. The Olivers' Motion for Reconsideration

5  Despite the court's unequivocal statement in its September 12, 2016, order that it

6  was not so ruling (*id.*), the Olivers nevertheless presently request that the court

7  "reconsider its earlier ruling that the ISP was incorporated by reference into the

8  Memorandum and Separation Agreement" (Olivers Mot. at 8; *see also id.* (referring to

9  "the issue of whether the Memorandum and Separation Agreement incorporated by

10  reference the ISP"); *id.* at 11 (referring to "a reversal of the Court's previous holding that

11  the ISP was incorporated into the Memorandum and Separation Agreement")). Thus, the

12  Olivers request reconsideration of a ruling that the court has not yet made. (*See generally*

13  9/12/16 Order.) The court cannot reconsider a nonexistent ruling.

14  If, on the other hand, the Olivers seek reconsideration of the court's ruling that

15  "the Company's Severance Pay Plan" is incorporated by reference into the parties'

16  agreement and that therefore the Memorandum and Separation Agreement are not the

17  sole documents that govern the parties' contract (Olivers Mot. at 1; *see also* Olivers

18  Reply (Dkt. # 45) at 1), the court declines to do so. To begin, as the court has previously

19  held, the plain language of the contract "clearly," "unequivocally," and "unambiguously"

20  incorporates another document by reference. (9/12/16 Order at 18-19 (citing *Ferrellgas*,

21  7 P.3d at 865).) Nevertheless, the Olivers point to Mr. Oliver's reliance on his

22  conversation with Ms. Hughes in which she told him that "[a]ll the information for the

agreement is included" in the documents he received (*see* Hughes Dep. at 63:4-22; *see*

*also* 3d Oliver Decl. ¶ 2) and other extrinsic evidence to argue that the Memorandum and

Separation Agreement stand alone (*see* Oliver Mot. at 8-9). Because the court can readily

ascertain the parties' intent to incorporate another document by reference to the words

used in the Memorandum and Separation Agreement, the extrinsic evidence the Olivers

offer to suggest a subjective contrary intent is irrelevant, and the court may not consider

it.[6] *See Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005)

("[T]he subjective intent of the parties is generally irrelevant if the intent can be

determined from the actual words used."); *Martin v. Smith*, 368 P.3d 227, 230 (Wash. Ct.

App. 2016) ("The parties' subjective intent is irrelevant if the [the court] can ascertain

their intent from the words in the agreement."); *William G. Hulbert, Jr. & Clare*

*Mumford Hulbert Revocable Living Trust v. Port of Everett*, 245 P.3d 779, 784 (Wash.

Ct. App. 2011) ("Extrinsic evidence may not, however, be used to show an intention

//

---

[6] In *Hearst Communications, Inc. v. Seattle Times Co.*, 115 P.3d 262, 266-67 (Wash. 2005), the Washington Supreme Court clarified confusion generated by its earlier decision in *Berg v. Hudesman*, 801 P.2d 222, 229-30 (Wash. 1990), in which the Court had adopted the "context rule" of contract interpretation. The Court explained that "Washington continues to follow the objective manifestation theory of contracts." *Hearst Commc'ns*, 115 P.3d at 267. Although a party may offer extrinsic evidence of the context surrounding an instrument's execution, "extrinsic evidence is relevant only to determine the meaning of specific words and terms, not to show an intention independent of the instrument or to vary, contradict or modify the written word." *Oliver v. Flow Int'l Corp.*, 155 P.3d 140, 143 (Wash. Ct. App. 2006). Thus, the court does not consider the Olivers' proffered extrinsic evidence because they offer the evidence to contradict the written words of the Memorandum and Separation Agreement, which unequivocally incorporate by reference "the Company's Severance Pay Plan" into the parties' contract. Because these terms are unambiguous, summary judgment on this issue is appropriate. *See Dice v. City of Montesano*, 128 P.3d 1253, 1257 (Wash. Ct. App. 2006) ("Interpretation of an unambiguous contract is a question of law, thus summary judgment is appropriate."); *see infra* § III.B.1.

1  independent of the instrument or to vary, contradict or modify the written word."(internal

2  quotation marks omitted)); *In re Mastro*, No. BAP WW-10-1142-MKHJU, 2011 WL

3  3300140, at *5 (B.A.P. 9th Cir. May 10, 2011) (citing *Hearst Commc'ns*, 115 P.3d at 270

4  & n.14) (stating that, under *Hearst*, the court may not consider extrinsic evidence if the

5  contract language is not reasonably susceptible to the meaning that the proffering party

6  attempts to attribute to it).

7      Indeed, the Olivers cite a case, *U.S. Life Credit Insurance Co. v. Williams*, 919

8  P.2d 594 (Wash. 1996), in which the court rejected a party's attempt to use extrinsic

9  evidence under factual circumstances similar to the Olivers' attempt here. (*See* Oliver

10  Mot. at 9 (citing *Williams*).) In *Williams*, extrinsic evidence showed that a representative

11  of an insurance company advised the insured that marking the insurance contract in a

12  certain way upon signing meant that the insurance coverage at issue would be extended to

13  both the insured and his wife. *Williams*, 919 P.2d at 596. The court held that such

14  extrinsic evidence could not be relied upon to modify the plain language of the insurance

15  contract that, by its terms, applied only to the husband. *Id.* at 597 ("That is so because

16  this evidence is contrary to other clear and unambiguous language in the insurance

17  certificate to the effect that disability insurance coverage was provided only to [the

18  husband]"). Similarly, the Olivers attempt to submit statements by Alcoa's

19  representatives to Mr. Oliver and other extrinsic evidence in an effort to contradict the

20  plain language of the Memorandum and Separation Agreement. The Olivers' attempt to

21  vary the contract's terms fails for the same reasons as those expressed by the court in

22  *Williams*.

1    Finally, the Olivers' reliance on Section 201 of the Restatement (Second) of

2    Contracts is misplaced. (*See* Olivers Mot. at 10-11 (citing Restatement (Second) of

3    Contracts §§ 201(2)(a), (b) (1981)). The Olivers argue that pursuant to this provision of

4    the Restatement, Mr. Oliver's interpretation of the terms "the Company's Severance Pay

5    Plan" and the "Plan" should prevail because he had no reason to know that Alcoa was

6    interpreting these terms to mean the ISP, whereas Ms. Hughes and Mr. Furnas knew

7    about the ISP. (*Id.* at 11.) However, Section 201 "does not operate independently of the

8    words in the Agreement," but "gives effect to one party's understanding only if the words

9    of the agreement can be read to embrace that party's understanding." *Arizona v. Tohono*

10   *O'odham Nation*, 944 F. Supp. 2d 748, 773 (D. Ariz. 2013), *aff'd*, 818 F.3d 549 (9th Cir.

11   2016).[7] Section 201 might come into play if the Olivers offered a competing, reasonable

12   interpretation of the terms at issue. They have not done so.

13       Indeed, the court cannot read the words of the Memorandum and Separation

14   Agreement to embrace the Olivers' understanding. Adopting the Olivers' interpretation

15   that the Memorandum and Separation Agreement are the sole documents governing the

16   parties' agreement would render the terms "in accordance with the Company's Severance

17   Pay Plan" and as "provided in the Plan" superfluous. Such an interpretation is disfavored

18   under Washington law. *Kut Suen Lui v. Essex Ins. Co.*, 375 P.3d 596, 602 (Wash. 2016)

19   (finding a party's contract interpretation "unreasonable because it ignores the plain

20

---

21   [7] Although the *Tohono* court interprets Arizona law, the court concludes that Washington
     law is the same. *See In re Mastro*, 2011 WL 3300140, at *5 (citing *Hearst Commc'ns*, 115 P.3d
22   at 270 & n.14) (stating that under Washington law extrinsic evidence may not be considered if
     the contract terms are not susceptible to the meaning the evidence would ascribe to it).

1  language . . . and causes much of the endorsement's language to become superfluous.");

2  *see also Stevens v. Sec. Pac. Mortg. Corp.*, 768 P.2d 1007, 1015 (Wash. Ct. App. 1989)

3  ("An interpretation which gives effect to all the words of a contract is favored over one

4  which renders some of the language meaningless or ineffective."); *Seattle-First Nat'l*

5  *Bank v. Westlake Park Assocs.*, 711 P.2d 361, 364 (Wash. Ct. App. 1985) (same).

6  Accordingly, the court rejects the Olivers' proffered interpretation and denies their

7  motion to reconsider its September 12, 2016, ruling.[8]

8  **B. The Parties' Cross Motions for Summary Judgment**

9  Alcoa moves for summary judgment that (1) the terms "the Company's Severance

10  Pay Plan" or the "Plan," contained within the Memorandum and Separation Agreement,

11  refer to and incorporate the ISP into the parties' contract, and (2) the ISP, in turn, bars

12  Mr. Oliver's claim for $80,292.00 in severance pay when Alcoa ultimately did not sever

13  his employment. (*See generally* Alcoa Mot.) The Olivers, on the other hand, ask the

14  court to rule on summary judgment that the terms "the Company Severance Pay Plan and

15  //

16  //

17  [8] The Olivers also assert that Alcoa hid the ISP from Mr. Oliver. (Oliver Mot. at 12.)
18  There is no dispute that a copy of the ISP was not physically attached to the Memorandum and Separation Agreement that Mr. Oliver executed, that Ms. Hughes told Mr. Oliver that he had all the information he needed to evaluate the agreement, and that neither Ms. Hughes nor Mr.
19  Furnas personally provided a copy of the ISP to Mr. Oliver. (*See* Hughes Dep. at 54:22-55:3, 59:7-20, 63:4-22; 3d Oliver Decl. ¶ 2; Furnas Dep. at 70:24-71:12.) Nevertheless, it is also
20  undisputed that Alcoa sent an email to Mr. Oliver with a link to a copy of the ISP on the Internet and advised Mr. Oliver to retain a copy of the ISP for future reference. (Gilmore Decl. ¶¶ 3-5, Exs. A, B.) It is also undisputed that the terms of the Separation Agreement state that Mr. Oliver
21  "acknowledge[s] . . . receiv[ing] a summary of Plan provisions describing the eligibility requirements for benefits under the Plan . . . ." (FAC, Ex. A at 5.) Based on this evidence, no
22  reasonable juror could conclude that Alcoa hid the ISP from Mr. Oliver.

1     the "Plan" refer not to a separate document, but to the Memorandum and Separation

2     Agreement themselves. (*See* Olivers Mot. at 7-11.)

3     **1. Standards for Summary Judgment Involving Contract Interpretation**

4     Summary judgment is appropriate if the evidence, when viewed in the light most

5     favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

6     any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

7     P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*,

8     477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing

9     there is no genuine issue of material fact and that he or she is entitled to prevail as a

10    matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden,

11    then the non-moving party "must make a showing sufficient to establish a genuine

12    dispute of material fact regarding the existence of the essential elements of his case that

13    he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658.

14    The court is "required to view the facts and draw reasonable inferences in the light

15    most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

16    Where cross motions are at issue, the court must "evaluate each motion separately, giving

17    the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of*

18    *Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (citations omitted); *see*

19    *also Friends of Columbia Gorge, Inc. v. Schafer*, 624 F. Supp. 2d 1253, 1263 (D. Or.

20    2008).

21    Summary judgment as to contract interpretation is appropriate only when the

22    interpretation does not depend on the use of extrinsic evidence or when the court can

reasonably infer only one interpretation based on the extrinsic evidence. *Go2Net, Inc., v. C I Host, Inc.*, 60 P.3d 1245, 1251 (Wash. Ct. App. 2003); *Ferrellgas*, 7 P.3d at 866 ("When extrinsic evidence is used to interpret a contract, summary judgment is appropriate only if one reasonable inference can be drawn from the extrinsic evidence."). However, as noted above, the court may not consider extrinsic evidence if the contract language is not susceptible to the meaning the proffering party attempts to ascribe to it. *See In re Mastro*, 2011 WL 3300140, at *5 (citing *Hearst Commc'ns*, 115 P.3d at 270 & n.14).

### 2. The Olivers' Summary Judgment Motion

The Olivers ask this court to rule on summary judgment that the terms "the Company's Severance Pay Plan" and the "Plan" as used in the Memorandum and Separation Agreement refer to the Memorandum and Separation Agreement. (Olivers Mot. at 7.) The Memorandum states that Mr. Oliver "will receive severance pay in accordance with the Company's Severance Pay Plan." (FAC Ex. A at 1.) The Separation Agreement states that Mr. Oliver "desire[s] to receive the pay and benefits provided in the Plan." (*Id.* at 3; *see also id.* (referencing "the payments and benefits provided to [Mr. Oliver] in the Plan").)

The court has previously held—and in this order declined to reconsider its ruling—that the terms "in accordance with" and "provided in" "clearly and unequivocally" incorporate "the Company's Severance Pay Plan" or the "Plan" into the contract between Alcoa and Mr. Oliver. (9/12/16 Order at 18); *see supra* § III.A.4. The court based its prior ruling on *Western Washington Corporation of Seventh-Day*

1  *Adventists v. Ferrellgas, Inc.*, 7 P.3d 861 (Wash. Ct. App. 2000), which held that the

2  doctrine of incorporation by reference allows parties to incorporate contractual terms by

3  reference to a separate agreement or document so long as the incorporation is "clear and

4  unequivocal." *Id.* at 865. In *Ferrellgas*, the contract at issue stated that the work would

5  "be performed in accordance with the 'Project Contract Documents' or the 'Contract

6  Documents.'" 7 P.3d at 865. The court held that this language "clearly and

7  unequivocally" incorporated the "Contract Project Documents" and the "Contract

8  Documents" into the parties' contract. *Id.* Similarly, this court held that the use of the

9  terms "in accordance with the Company's Severance Pay Plan" and "provided in the

10  Plan" incorporated "the Company's Severance Pay Plan" or the "Plan" into the parties

11  agreement. (9/12/16 Order at 18.) The question now before the court is the meaning of

12  these terms.

13      The Olivers argue that the terms "the Company's Severance Pay Plan" and the

14  "Plan" actually do not refer to a separate, incorporated document, but rather refer back to

15  the Memorandum and Separation Agreement themselves. (*See* Oliver Mot. at 12-13.) In

16  so arguing, the Olivers rely on Ms. Hughes's testimony that she told Mr. Oliver that "[a]ll

17  the information for the agreement is included" in the documents he received (Hughes

18  Dep. at 63:4-22; *see also* 3d Oliver Decl. ¶ 2 ("[Ms. Hughes] assured me that there was

19  nothing else to review and no other relevant documents . . . .")), and Mr. Oliver's

20  testimony that based on Ms. Hughes's statements he believed that "'the Company's

21  Severance Pay Plan' and 'the Plan' must be the legal terms for the documents he already

22  had" (3d Oliver Decl. ¶ 2; Oliver Dep. at 32:8-13).

1      The court, however, declines to consider this extrinsic evidence because the

2  Olivers offer it to vary or contradict the terms the Memorandum and Separation

3  Agreement or to show an intention that is at odds with the parties' written contract. *See*

4  *William G. Hulbert*, 245 P.3d at 784.  As the court has held, the Memorandum and

5  Separation Agreement "clearly and unequivocally" incorporate a separate document,

6  which the Memorandum and Separation Agreement refer to as "the Company's

7  Severance Pay Plan" or the "Plan." (9/12/16 Order at 18.)  The interpretation the Olivers

8  offer—that "the Company's Severance Pay Plan" or the "Plan" refer to the Memorandum

9  and Separation Agreement themselves—is not reasonable.  The Olivers' proffered

10  interpretation would mean that the Memorandum and Separation Agreement incorporated

11  themselves by reference.  This argument is just another attempt to disregard the

12  contractual language that unambiguously incorporates another document by reference.

13  The court declines to adopt so nonsensical an interpretation.[9]  The court, therefore, denies

14  the Olivers' motion for summary judgment.

15      **3.  Alcoa's Motion for Summary Judgment**

16      Based on the court's prior ruling that the Memorandum and Separation Agreement

17  incorporate another document referred to as "the Company's Severance Pay Plan" or the

18  "Plan" (9/12/16 Order at 18), Alcoa now asks the court to enter summary judgment on

19  //

20

21      [9] Indeed, the court may not consider the Olivers' extrinsic evidence on this point because
the contract language is not reasonably susceptible to the meaning that the Olivers are attempting
to ascribe to it.  *See In re Mastro*, 2011 WL 3300140, at *5 (citing *Hearst Commc'ns*, 115 P.3d
22  at 270 & n.14).

1   the meaning of those terms (*see generally* Alcoa Mot.). Specifically, Alcoa asks the

2   court to rule that these terms refer to the ISP and that the ISP bars Mr. Oliver from

3   receiving severance pay because Alcoa did not ultimately sever his employment.[10] (*See*

4   *id.*)

5          Like the Olivers, Alcoa offers extrinsic evidence to support its position that the

6   terms "the Company's Severance Pay Plan" and the "Plan" in the Memorandum and

7   Separation Agreement refer to the ISP. (*See* Alcoa Resp. at 15.) First, Alcoa submits

8   testimony that the ISP is Aloca's only large-scale severance pay plan, and Alcoa uses the

9   ISP nationwide with few exceptions. (Hughes Decl. ¶ 10.) Further, Alcoa specifically

10  utilized the ISP to calculate Mr. Oliver's anticipated $80,292.00 in severance pay as

11  stated in the Memorandum and Separation Agreement. (*See* Furnas Dep. at 59:13-25;

12  78:25-79:2 ("[The ISP is] the plan that is used to calculate what the employee gets, so it's

13  kind of an integral part of this whole . . . process.").) Indeed, the Olivers impliedly admit

14  that the "actual benefits calculation" contained in the Memorandum and Separation

15  Agreement is derived from the ISP and that Alcoa discussed the calculation with Mr.

16  Oliver. (*See* Olivers Mot. at 9 ("[N]one of the ISP's terms (other than the actual benefits

17  //

18  ───────────────────────

19  [10] In its prior motion to dismiss the complaint, Alcoa also argued that the terms "the
    Company's Severance Pay Plan" and the "Plan" referred to the ISP. (MTD at 3.) In denying the
    Olivers' first motion for summary judgment, the court stated that it was constrained from
20  entering summary judgment on whether the ISP was incorporated into the Memorandum and
    Separation Agreement because Alcoa expressly asked the court not to convert its motion to
21  dismiss into a motion for summary judgment and due to the early procedural posture of the case.
    (9/12/16 Order at 25-26, n.10 (citing Fed. R. Civ. P. 56(d)).) These issues no longer impede the
22  court's decision. Alcoa seeks a ruling on summary judgment (*see* Alcoa Mot.), and discovery is
    now closed (*see* Sched. Order (Dkt. # 30) at 1).

calculation) were ever discussed with [Mr.] Oliver."); *see also* Oliver Dep. at

22:19-23:11 ("[Mr. Furnas] went over what the possible package could include. . . .

Basically that I would receive, if I qualified, basically a year's wages.").) Finally, as

noted above, there is no dispute that Alcoa emailed a copy of the ISP to Mr. Oliver in

2012 and instructed him to retain a copy "for future reference." (Gilmore Decl. ¶¶ 3-5,

Exs. A, B; Oliver Dep. at 53:20-24.)

The court's previous order left open only one unresolved issue: the identity of

the document that the parties "clearly and unequivocally" incorporated by reference into

the Memorandum and Separation Agreement. (*See* 9/12/16 Order at 20 ("[T]he critical

issue in this case is the parties' intention concerning the meaning of 'the Company's

Severance Pay Plan' or the 'Plan' as those terms are used in the Memorandum and

Separation Agreement.").) The court previously ruled that Alcoa's proffered

interpretation of these terms as referring to the ISP was "a reasonable one." (*Id.* at 23.)

The extrinsic evidence Alcoa relies upon reinforces the court's prior conclusion. The

court has already found that the Oliver's proffered interpretation of these terms as

referring to the Memorandum and Separation Agreement themselves is not reasonable

and that the contract's language is not susceptible to the meaning the Olivers ascribe to it.

*See supra* §§ III.B.5, III.C.2. This conclusion leaves the court with only one

interpretation of the terms at issue—Alcoa's interpretation—that can be reasonably

inferred from the extrinsic evidence that the court may consider on this motion.[11] *See*

---

[11] As noted above, the court may not consider the Olivers' proffered extrinsic evidence in deciding this motion because the contract language is not reasonably susceptible to the meaning

*Go2Net, Inc.*, 60 P.3d at 1250-51. Because the Olivers failed to offer any competing reasonable interpretation of the contract terms at issue, the Olivers have failed to demonstrate a genuine dispute of material fact necessary to defeat Alcoa's motion for summary judgment. Accordingly, the court grants Alcoa's motion that the terms "the Company's Severance Pay Plan" and the "Plan" as used in the Memorandum and Separation Agreement refer to the ISP.[12]

As noted above, the ISP expressly states in numerous places that employees are eligible to receive severance payments only if Alcoa permanently severs their employment. (Furnas Decl. ¶¶ 3-4, Ex. A); *see infra* § II. There is no dispute that Alcoa did not sever Mr. Oliver's employment on March 31, 2016, and that he continued to work

_____

that the Olivers attempt to ascribe to it. *See In re Mastro*, 2011 WL 3300140, at *5 (citing *Hearst Commc'ns*, 115 P.3d at 270 & n.14). Thus, the court considers only the extrinsic evidence Alcoa has submitted on this issue.

[12] Despite the undisputed fact that Alcoa sent a copy of the ISP to Mr. Oliver in 2012 (*see* Gilmore Decl. ¶¶ 3-5, Exs. A-B; Oliver Dep. at 53:20-24), the Olivers continue to assert that Alcoa concealed the ISP from Mr. Oliver when he executed the Memorandum and Separation Agreement in 2015 and that Alcoa's agent made "misleading statements . . . upon which Mr. Oliver relied." (Oliver Resp. at 9.) The Olivers, however, do not explain how these allegations are relevant to their claims. As noted above, the Olivers cannot rely on extrinsic evidence to modify, vary, or contradict the terms of the contractual documents at issue. *See supra* § III.A; *see also Go2Net, Inc.*, 60 P.3d at 1251. Further, all of the Olivers' claims are founded on breach of contract theories. (*See* FAC ¶¶ 3.1-3.3 (alleging that the Olivers are entitled to a declaratory judgment that the "Separation Agreement is a binding contract" and Mr. Oliver is entitled to "the severance amount agreed to between the parties"), ¶¶ 4.1-4.6 (alleging that "[t]he parties entered into an enforceable Separation Agreement" and that Alcoa's "are entitled to specific performance of the . . . Separation Agreement by court decree"), ¶¶ 5.1-5.5 (alleging breach of contract), ¶¶ 6.1-6.5 (alleging willful withholding of wages in violation of RCW 49.52.050 for "[f]ailure to pay the wages contractually agreed upon").) The Olivers have not asserted any claim based on an equitable theory or some form of misrepresentation or fraud (*see generally id.*), and Mr. Oliver testified that he has no other claims against Alcoa other than those contained in the complaint (Oliver Dep. at 54:19-22). Thus, Mr. Oliver's allegations about concealment of the ISP or reliance on Alcoa's statements are irrelevant to the Olivers' contractual claims and provide no basis for denying summary judgment to Alcoa.

at the Ferndale plant until he voluntarily retired on May 31, 2016. (Oliver Dep. at 44:7-8; 46:6-24; *see* 1st Oliver Decl. ¶¶ 10-12.) Accordingly, the court also grants Alcoa's motion for summary judgment that Mr. Oliver is not entitled to a severance payment from Alcoa because Alcoa did not permanently sever his employment.[13]

**C. Alcoa's Motion for a Stay**

On April 13, 2017, Alcoa filed a motion seeking a stay in the proceedings pending the court's determination of the parties' dispositive motions. (*See* MTS.) The court has now denied the Olivers' motion for reconsideration and for summary judgment and granted Alcoa's motion for summary judgment in total. None of the Olivers' claims survive this ruling. Accordingly, Alcoa's motion for a stay pending the court's is now moot, and the court denies it.

## IV.    CONCLUSION

Based on the foregoing analysis, the court DENIES the Olivers' motion for reconsideration and for summary judgment (Dkt. # 40), GRANTS Alcoa's motion for summary judgment on all of the Olivers' claims (Dkt. # 32), and DENIES as moot Aloca's motion to stay the proceedings (Dkt # 47).

Dated this 24 day of April, 2017.

JAMES L. ROBART
United States District Judge

---

[13] In their response to Alcoa's motion, the Olivers argue that Alcoa's motion was premature because discovery was incomplete. (Olivers Resp. at 10.) This argument is moot because discovery is now closed. (*See* Sched. Order at 1 (setting the discovery cutoff on February 6, 2017).)